IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | |
|---|---|
| IN RE: § | CASE NO. 07-33553-SGJ7 |
| SCOTT EDWARD JOHNSON, § | CHAPTER 7 |
| Debtor § | |
| AURORA LOAN SERVICES, LLC, § | HEARING DATE: April 1, 2010 |
| Movant § | HEARING TIME: 1:30 PM |
| § | JUDGE: HONORABLE STACEY G. JERNIGAN |
| V. § | |
| SCOTT EDWARD JOHNSON, and § DANIEL J. SHERMAN, Trustee, § | |
| Respondents § | |

FILED MAR 15 2010 TAWANA C. MARSHALL, CLERK U.S. BANKRUPTCY COURT NORTHERN DISTRICT OF TEXAS

## DEBTOR'S RESPONSE TO MOVANT'S MOTION FOR RELIEF FROM STAY OF ACT AGAINST PROPERTY AND DEBTOR'S REQUEST FOR QUIET TITLE HEARING

COMES NOW alleged Debtor, Scott Edward Johnson, pursuant to the required hearing on April 1, 2010 to request this Honorable Court to stay any action initiated by the Movant and to grant alleged Debtor a hearing for Quiet Title on the property in question: 2401 Dove Road, Grapevine, Texas [76051] (hereinafter the "property"). It has become apparent to the alleged Debtor that the Movant, AURORA LOAN SERVICES, LLC, has no lawful authority under State or Federal laws to proceed with any foreclosure suits, evictions or possession of the aforementioned property.

1

Alleged Debtor understands that all so-called creditors must fill out, under penalty of perjury, a B-12 Form providing the U.S. Justice Department with reasons why the so-called creditors have a legitimate claim on any property in question. It stands to reason that if there is a broken link within that legal chain, then there is a potential fraud.

Has the Movant possession of any original note to provide evidence of the Movant being a "holder-in-due course"? Has the Movant the original Deed? United States District Courts in States like California and Illinois are dismissing foreclosure suits because the service companies cannot provide notes and deeds evidencing their authority to sue. Is there an original assignment signed before expiration date of the assignment, before the Chapter 7 filing, and on the official date of assignment? Assignments are key in determining who actually owns the loan, an issue that has become all-important as banks foreclose on millions of loans that were bundled into securities and sold to investors. Are there any documents indicating that the Movant has a contract with the alleged Debtor? Does the Movant have any equity interest in the "property"? Was the alleged original note in question based upon a transaction which was illegal under Federal law? Does a history of payments by the alleged Debtor really matter if the original mortgage company became complicit in an illegal act such as counterfeiting in the creation of alleged "money" out of thin air with claims of loaning said "money"? Can any

alleged lender accept a note and refuse to discharge the debt, dollar for dollar, as required in HJR 192 of 1933? Mortgage bankers have nothing at risk on the note, and after the note is acquired, the mortgage company then sells the note for a profit. This being the case, how is it possible for a servicer to legally foreclose upon any note? Texas statutes do not reflect the reality of the issues under House Joint Resolution 192.

Franklin Delano Roosevelt issued Executive Order 6102 in 1933 to remove the gold from circulation and Congress issued HJR 192 in 1933 to provide a remedy for the public to engage in commerce without real money. We are a credit society, and under HJR 192 no one can require another form of currency or payment after a note is used to discharge the debt, dollar for dollar. If this Honorable Court finds these issues to be instrumental in adjusting the elements thought to be truth, then alleged Debtor requests this Court to stay the illegal attempts of Movant to foreclose or evict alleged Debtor from alleged Debtor's home built by the sweat of alleged Debtor's hands.

This is an attempt to enjoin a foreclosure sale to be posted under an unlawful declaration of default and acceleration of maturity of a promissory note which has, according to Federal law, become a demand deposit of value, the note, upon which a thin air creation of electronic currency is based, without the use of either real money or the alleged lender's deposits. See <u>MODERN MONEY MECHANICS</u>, a

Federal Reserve Bank of Chicago publication at page six regarding notes as demand deposits like cash. The note belongs to the consumer as an asset.

Federal Courts have determined that national banks are prohibited from loaning their assets or credit. Isn't this true of mortgage companies? Isn't the consumers' credit being used here instead of the mortgage company's credit? A promissory note is a form of currency which is defined by federal law. The contract to pay is usurious in relation to U.S. House Joint Resolution 192 (HJR 192) of 1933 attached as Exhibit A. Shouldn't the Justice Department investigate this obvious violation of Federal law? Were not the purchasers of these unregistered securities, which transactions have not been filed in the county recorders' offices, cheated into believing the unrecorded and unregistered securities were valid? Are not the servicers hiding the fact that all proper procedures were not accomplished?

Various States' courts have ruled that servicers have no authority to sue for foreclosure using (MERS) Mortgage Electronic Registration Services as an example. MERS holds about half of the mortgage notes within the United States. Securities holders have no standing to foreclose, because they were not signatories to the original agreement. They cannot satisfy the basic requirement of contract law that a plaintiff suing on a written contract must produce a signed contract proving he is entitled to relief. Many times the originating lenders systematically

pledged the loans, and didn't actually transfer them to the trusts that are supposed to hold them and issue the securities. The result is a paper trail that goes nowhere. Many times the originals were "deliberately eliminated to avoid confusion" when entered into an electronic format. The problem with that is the court requires an original. Ownership transfers after the foreclosure has been assigned, copies of notes and false signatures have been argued to amount to fraud.

The following decisions provide an understanding of unrealistic relationship with mortgage servicers. "The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.] Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623 (Mo. App. 2009). The Missouri court found that, because MERS was not the original holder of the promissory note and because the record contained no evidence that the original holder of the note authorized MERS to transfer the note, the language of the assignment purporting to transfer the promissory note was ineffective. "MERS

5

never held the promissory note, thus its assignment of the deed of trust to Ocwen separate from the note had no force." 284 S.W.3d at 624; see also In re Wilhelm, 407 B.R. 392 (Bankr. D. Idaho 2009) (standard mortgage note language does not expressly or implicitly authorize MERS to transfer the note); In re Vargas, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008) ("[I]f FHM has transferred the note, MERS is no longer an authorized agent of the holder unless it has a separate agency contract with the new undisclosed principal. MERS presents no evidence as to who owns the note, or of any authorization to act on behalf of the present owner."); Saxon Mortgage Services, Inc. v. Hillery, 2008 WL 5170180 (N.D. Cal. 2008). Movant, AURORA LOAN SERVICES, LLC, has no capacity to represent anyone in a foreclosure eviction process or foreclosure sale. Who is the note holder? There can only be one reason why that isn't clear: to hide what they are really doing and to provide a mechanism to diminish the possibility of multiple claims from multiple participants in the securitization chain. Nobody needed MERS or any of these other foreclosure entities when the identity of the creditor/lender was clear.

Alleged Debtor requests this Honorable Court grant the hearing for quiet title based upon the aforementioned irregularities attributed to the Movant and original mortgage company lacking both proper procedures and initiating illegal actions in

the mortgage lending process. Alleged Debtor's affidavit and motions will follow this response to Movant.

>	Respectfully submitted,
>
>	SCOTT EDWARD JOHNSON
>
>	By: /s/ Scott Edward Johnson
>	Scott Edward Johnson
>	2401 W. Dove Road
>	Grapevine, Texas [ 76051 ]
>	(817) 821-7770

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing <u>DEBTOR'S RESPONSE TO MOVANT'S MOTION FOR RELIEF FROM STAY OF ACT AGAINST PROPERTY AND DEBTOR'S REQUEST FOR QUIET TITLE HEARING</u> was served on:

Date: **March 15th, 2010** by **First Class Mail** to the following parties:

Tracy D. Fink, SBOT 24055887, attorney for movant
Fite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, California 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

and


U.S. Trustee
U.S. Department of Justice
1100 Commerce Street, Room 976
Dallas, Texas 75242-1496

and


Chapter 7 Trustee
Daniel J. Sherman
509 N. Montclair
Dallas, Texas [ 75208 ]

8